[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorney, Thomas Conroy, was ineffective in that he (1) failed to raise the defense of factual innocence; (2) failed to properly investigate the case and have a forensic expert examine the petitioner's clothing to determine the entry and exit wound inflicted upon him by the police; (3) failed to identify and interview material eyewitnesses; (4) failed to explore bad faith of the police in destroying his clothing found at the scene; (5) failed to effectively cross-examine Detectives DiLullo and Sweeney as to prior inconsistent statements; and (6) failed to move to preserve exculpatory evidence for the trial.
The petitioner's arrest and conviction arise from events on March 8, 1994 when New Haven police were informed that the petitioner for whom there was an outstanding arrest warrant was standing at the corner of Chapel and Day Streets. The police who were alerted as to his description and that he was armed and dangerous approached him after exiting from two cruisers. When the police identified themselves, the petitioner began to run and a chase ensued. It is alleged that the petitioner then pulled a gun from his waist band and pointed it at Detective Sergeant Sweeney who alerted to the other detective shot the petitioner who fell to the ground. The police recover the petitioner's gun which was cocked and loaded. He was convicted of attempt to commit assault in the first degree, attempt to commit assault of a peace officer, criminal possession of a pistol and as a persistent serious felony offender.
The petitioner called Conroy and himself. He acted as his own counsel but permitted Attorney Rigat to question him as a witness.
Conroy testified that he replaced Attorney DeMarco in representing the petitioner. The petitioner claimed to have been shot in the back and not in the front but he was unable to ascertain that from the medical records nor the examination of a retained pathologist. The investigator scoured the neighborhood for eyewitnesses without success. The medical ambulance technician indicated a frontal entry wound. A correction officer who was an eyewitness and the police officers said it was a CT Page 2759 frontal wound. He couldn't see how it was important although the petitioner claimed it so.
The petitioner testified that he was standing outside a soul food restaurant when he heard and saw people running towards him and he bolted up the street. He heard, "Stop, stop, police", heard a shot and went down with a shot in his back. Medics stripped his clothes and put him in the ambulance. Conroy never obtained his clothing for a forensic examination. He denied he had a gun. Conroy failed to bring out the inconsistencies in the testimony of DiLullo and Sweeney.
The theory of the petitioner's defense was that he was shot in the back and had no gun of his own. He claimed that his clothing which was not provided at his criminal trial would demonstrate an entrance and an exit hole to prove such a theory. On April 16, 1999 the clothing was discovered in the evidence room of the New Haven Police Department and brought in to court and identified as that of the petitioner by his own testimony. Examination of such clothing was to be set for a mutually agreeable date by the parties. On September 27, 1999, after the State Police Forensic Lab was approached to examine such clothes to determine whether an exit and entrance hole could be made, the State Police Forensic Lab required a court order to do so. Although there was no foundation to believe that such a determination could be made, the court offered to make the order if the petitioner would accept the result. He refused to do so and the court continued the matter to determine whether the petitioner could either obtain a pathologist on his own or in the alternative to demonstrate that a test of the clothing would be able to produce such a positive result. On November 29, 1999 neither result occurred but the respondent requested time to subpoena the medical reports of the petitioner's wound. The petitioner was again offered the services of the State Police Forensic Lab if he would accept the results and he again refused. On February 7, 2000 the hospital report of the petitioner's March 8, 1994 wound and treatment was introduced as Respondent's Exhibit E. The petitioner's desire to have further time to analyze the clothes was denied and the evidence was closed.
Four police officers, Sgt. Kendall, Det. DiLullo, Lt. Sweeney and Lt. McDonald and a retired Correctional Officer, Cecil Estes, all testified that they witnessed the petitioner turn with a drawn handgun to shoot at Lt. Sweeney when Lt. Sweeney shot the petitioner and, after he fell, Lt. Sweeney kicked the handgun CT Page 2760 away from the hand of the petitioner. See Petitioner's Exhibit 9.
A successful petitioner must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,446 U.S. 668, 694. The petitioner has failed to prove how the result would be different. He has simply offered his denial that he had a hand gun against the five eye-witnesses whose evidence has convicted him.
He has also failed to prove counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum,211 Conn. 352, 359. Conroy had an investigator scour the neighborhood for eye-witnesses without success, he engaged a pathologist who was unable to determine from the photographs of the healed wounds the entry or exit wound, and his cross-examination of the state's witnesses was adequately presented. His testimony that an ambulance attendant described a frontal entrance bullet wound is corroborated by the ambulance attendant's report contained in the hospital record, Respondent's Exhibit E, that Davis "had a single gunshot wound. Entrance wound is RUQ (Right Upper Quadrant), with an exit wound on the right side of his back." The frontal wound is further corroborated by the operative note contained inRespondent's Exhibit E, that the only observable wound to any organ was "a 4 cm laceration on the anterior portion of the liver", after following the entrance and exit wound tracts.
For the above reasons the petition is denied.
Corrigan, JTR